On respondent - cross-appellant's petition for reconsideration filed November 18, respondent JC Northwest, Inc., dba Adolf's Electric's petition for reconsideration filed November 18, appellant - cross-respondent's response filed December 2, and respondent - cross-appellant's response filed December 11, 1998, petitions for reconsideration allowed; former opinion (157 Or App 79, 967 P2d 924) withdrawn, affirmed on appeal and cross-appeal March 24, petition for review denied July 6, 1999 (329 Or 61)

## PLATT ELECTRIC SUPPLY, INC.,
*Respondent - Cross-Appellant,*

*v.*

## JC NORTHWEST, INC.,
dba Adolf's Electric, and Cole Chaney, Inc.,
*Respondents,*

*and*

## POLK COUNTY HOUSING AUTHORITY,
*Appellant - Cross-Respondent.*

(96P-1093; CA A95274)

976 P2d 1186

Frederick A. Batson and Gleaves Swearingen Larsen Potter Scott & Smith LLP for petition and response of respondent - cross-appellant.

George Kelly for petition of respondent JC Northwest, Inc., dba Adolf's Electric.

Mark B. Comstock and Garrett, Hemann, Robertson, Paulus, Jennings & Comstock, P.C., for response of appellant - cross-respondent.

Before Landau, Presiding Judge, Deits, Chief Judge, and Wollheim, Judge.

LANDAU, P. J.

## LANDAU, P. J.

Respondents Platt Electric Supply, Inc. (Platt), and Adolph's Electric (Adolph's) petition for reconsideration of our decision in *Platt Electric Supply, Inc. v. JC Northwest, Inc.*, 157 Or App 79, 967 P2d 924 (1998), arguing that our opinion is based on an incorrect understanding of the sequence of relevant events. We allow the petitions, withdraw our former opinion and dispose of the parties' contentions as follows.

In *Platt*, we held that, because the Polk County Housing Authority (PCHA) had declared an emergency before awarding a contract on a public housing project, it was excused from bond requirements to which public contracting agencies ordinarily are subject. Platt and Adolf's contend that our opinion incorrectly assumed that PCHA declared an emergency *before* it awarded the contract. In actuality, they contend, PCHA awarded the contract first and declared an emergency afterwards, apparently intending its declaration to have retroactive effect. According to Platt and Adolph's, because the emergency declaration occurred after the contract award, it can have no legal effect.

In its brief, Platt represented the undisputed facts to include a chronology that placed the declaration of an emergency before the contract award:

"1.   In 1993 Polk County put out for bid the Independence Duplexes project * * *.

"2.   Polk County is the owner of the property on which the project was to take place and the public agency which let the project.

"3.   In response to its first solicitation for bids, Polk County did not get any bids from contractors financially able to provide a performance and payment bond that would protect Polk County and subcontractors from failures by the general contractor to perform or to pay subcontractors and material suppliers.

"4.   Polk County elected not to rebid the project and instead declared an emergency in order to avoid requiring the general contractor to post a bond to protect Polk County from nonperformance by the general

contractor and from payment claims by any supplier or subcontractor working on the project.

"5.   Cole Chaney, Inc. (Chaney) was awarded the project and was not required to post a bond.

"6.   Chaney subcontracted with Adolph's Electric (Adolph's) to do the electrical work required to perform the Project. Platt contracted with the subcontractor, Adolph's, to provide materials and supplies to Adolph's for the performance of its electrical subcontract with the general contractor, Chaney, on the project.

"7.   Chaney defaulted and failed to pay various subcontractors who then, in turn, did not pay various material suppliers.

"8.   Adolph's was one of the unpaid subcontractors * * *.

"9.   Platt was one of Adolph's unpaid suppliers * * *."

(Citations omitted.) Platt then argued that, notwithstanding the declaration of an emergency, PCHA remained liable, because it had failed to obtain a bond from Chaney. According to Platt, the declaration of an emergency did not relieve PCHA of its liability for failing to post a bond:

> "Polk County did not require Chaney to post a bond. It knew Chaney was not financially strong enough to post the bond that was normally required as indicated in its resolution waiving 'the requirement of a performance bond on account of such emergency, pursuant to ORS 279.029.' Instead, it took a chance on Chaney. It declared an emergency pursuant to ORS 279.029(5) thereby waiving the bond requirements of the public contracting statutes.
>
> "* * * * *
>
> "Where the public agency, in this case Polk County, declares an emergency and waives the bond requirements, the public agency and the officers authorizing the contract take a risk [of joint liability]."

Thus, as posed by Platt, the issue before us was whether the declaration of emergency had the effect of relieving PCHA of joint liability for failing to obtain a bond. Adolph's, although joining in Platt's contention that PCHA was liable for failing to obtain a bond, did not join in that particular argument.

We took the facts as represented by Platt and held that, under ORS 279.025(5), the declaration did have the effect of excusing PCHA from obtaining a bond and from any liability for failing to do so. *Platt*, 157 Or App at 83. Now Platt argues that we misunderstood the sequence of events. According to Platt, although a declaration of emergency may have the effect of relieving a public agency of obtaining a bond, in this case it does not have that effect, because the declaration of emergency did not take place until after the contract award.

We certainly did misunderstand the sequence of events. We understood them to be as Platt had represented them in its statement of facts and in its arguments. Nevertheless, careful examination of the record does reveal that the emergency declaration followed the contract award. Ultimately, it is the court's obligation to examine the record to determine the extent to which the parties have correctly represented the facts. Accordingly, we allow the petitions for reconsideration and determine whether the facts as we now correctly understand them require affirmance of the trial court's judgment holding PCHA liable to Platt and Adolph's because it failed to require a bond of the general contractor, which failed to pay for work performed on a public housing project.

We must first determine whether PCHA's contract with Chaney was governed by the provisions of ORS chapter 279. ORS 279.011 provides the following definitions that are relevant to the questions at issue:

"(6) 'Public contract' means any purchase, lease or sale by a public agency of personal property, public improvements or services other than agreements which are for personal service.

"(7) 'Public agency' or 'public contracting agency' means any agency of the State of Oregon or any political subdivision thereof authorized by law to enter into public contracts and any public body created by intergovernmental agreement.

"(8) 'Public improvement' means projects for construction, reconstruction or major renovation on real property by or for a public agency. 'Public improvement' does not

include emergency work, minor alteration, ordinary repair or maintenance necessary in order to preserve a public improvement."

ORS 279.015 provides that the bidding requirements of the chapter shall apply to "all public contracts," except for those specifically exempted by ORS 279.015. PCHA makes no argument that its contract with Chaney fits within any of the exemptions specified in ORS 279.015.

ORS 279.029 provides for the award of contracts by public contracting agencies to the lowest responsible bidder. ORS 279.029 further provides:

"(4) The successful bidder shall:

"* * * * *

"(b) If the contract is for a public improvement, execute and deliver to the public contracting agency a good and sufficient bond, to be approved by the public contracting agency, in a sum equal to the contract price for the faithful performance of the contract. In lieu of a surety bond, the public contracting agency may permit the successful bidder to submit a cashier's check or certified check in an amount equal to 100 percent of the contract price.

"(5) In cases of emergency, or where the interest or property of the public contracting agency probably would suffer material injury by delay or other cause, the requirement of furnishing a good and sufficient bond for the faithful performance of any public contract may be excused, if a declaration of such emergency is made and concurred in by all members of the governing board of the public contracting agency."

ORS 279.542 provides:

"If the contract is one for which a bond, cashier's check or certified check as provided for in ORS 279.029 is required and the contractor fails to pay for labor or materials * * * and the officers of the public body which let the contract fail or neglect to require the person entering into the contract to execute the bond, cashier's check or certified check:

"(1) The State of Oregon and the officers authorizing the contract shall be jointly liable for the labor and materials used in the prosecution of any work under the contract,

* * * if the contract was entered into with the State of Oregon.

"(2) The public body and the officers authorizing the contract shall be jointly liable for the labor and materials used in the prosecution of any work under the contract * * * if the contract was entered into on behalf of a public body other than the state."

The trial court concluded that the contract between PCHA and Chaney was a public contract for purposes of ORS chapter 279, that a bond was required pursuant to ORS 279.029(4), and that PCHA had failed to obtain a bond and therefore was liable under ORS 279.542(2).

On appeal, PCHA first argues that it is not a "public contracting agency" or "public agency" as that term is defined in ORS 279.011(7) and thus is not subject to ORS chapter 279 at all. We do not reach the merits of PCHA's argument because it has formally admitted that it is a "public agency" or "public contracting agency" for purposes of ORS chapter 279. In its answer to plaintiff's complaint, PCHA "admits that it is the *public agency* which let the project and declared an emergency pursuant to ORS 279.0[29](5)."[1] Given that admission, PCHA cannot argue that it is not a public agency for purposes of ORS chapter 279.

■ PCHA next argues that ORS 456.122 exempts housing authorities from the public contracting requirements of ORS chapter 279. ORS 456.122 provides:

"Unless specifically provided, no law with respect to the acquisition, operation or disposition of property by other public bodies applies to a housing authority."

However, PCHA does not explain how putting a public contract out for bid, then entering into a contract for the construction of a public improvement, is "the acquisition, operation or disposition of property." PCHA relies on a 1979 letter

---

[1] Similarly, in response to Adolf's cross-claims against it, PCHA admitted that the "public agency that let the project declared an emergency pursuant to ORS 279.0[29](5)." PCHA, in its response to plaintiff's motion for summary judgment, specifically did not contest that plaintiff had supplied materials "in performance of *this public contract.*"

of advice from the Attorney General's office regarding remodeling of a building, which concluded that "operation * * * of property" under ORS 456.122 included remodeling because ORS 456.125(6) included "construction, reconstruction, improvement, alteration or repair of any housing project" as "within the 'area of operation' of a housing authority." *Letter of Advice to Honorable Charles Hanlon*, Opinion Request OP-4769 (1979).

■ We do not find the legal analysis in that letter opinion to be persuasive. ORS 456.125 provides, in part:

"Within its area of operation, a housing authority may:

"* * * * *

"(6) Provide for the construction, reconstruction, improvement, alteration or repair of any housing project or any part thereof."

That statute, however, cannot fairly be read to mean that "construction, reconstruction," etc., are therefore "operation * * * of property" for purposes of ORS 456.122. "Area of operation" is a term that is defined by ORS 456.060:

"As used in the Housing Authorities Law, unless the context requires otherwise, 'area of operation' includes:

"(1) In the case of a housing authority of a city:

"(a) The area within the city;

"(b) If the city has adopted in its comprehensive land use plan an urban growth boundary recognized by the governing bodies of the counties in which it is situated, the area within that urban growth boundary; and

"(c) Unless a county has an existing housing authority which is operating and substantially addressing the need for housing in the county for persons of lower income, the area within 10 miles from the territorial boundaries of the city, excepting any area which lies within the territorial or urban growth boundaries of some other city which has by ordinance prohibited such operation within the city or its urban growth boundaries because the city finds that:

"(A) An existing public agency operating within the area is substantially addressing the need for housing in the city for persons of lower income; or

"(B)    There is no need for housing in the city for persons of lower income.

"(2)    In the case of a housing authority of a county, the area within the county which lies:

"(a)    Outside the territorial boundaries of any city or, if a city has adopted in its comprehensive land use plan an urban growth boundary recognized by the governing bodies of the counties in which it is situated, that urban growth boundary; and

"(b)    Inside the territorial or urban growth boundaries of any city unless the city has by ordinance prohibited such operation within the city or its urban growth boundary because the city finds that:

"(A)    An existing public agency operating within the area is substantially addressing the need for housing in the city for persons of lower income; or

"(B)    There is no need for housing in the city for persons of lower income."

It is clear from this definition that the "area of operation" mentioned in ORS 456.125 is not, as the advice letter concluded, a synonym for "scope of operation," but is a reference to the geographical area in which a housing authority may operate.

PCHA's contract required Chaney to engage in construction work and clearly did not involve any "acquisition" or "disposition" of property by PCHA. ORS 456.122. Nor does contracting for the construction of a public improvement fall within the common meaning of "operation * * * of property." *Id.* In this context, the word "operation" generally means "planning for and operating a business or other organized unit ‹the of a large household›." *Webster's Third New Int'l Dictionary*, 1581 (unabridged ed 1993). We have found no usage of the words that suggest that "operation * * * of property" could encompass contracting for construction of public improvements on property. We reject PCHA's claim that it is exempt from the public contracting requirements of ORS chapter 279 because its contract with Chaney involved the "operation * * * of property" as that phrase is used in ORS 456.122.

■ Therefore, we conclude that the trial court properly held that PCHA was a public agency subject to the requirements of ORS chapter 279 and that it was not exempt from those requirements under ORS 456.122. Under ORS 279.029(4), PCHA was required to obtain a bond or a check from Chaney for the contract price. It failed to do so. As noted above, PCHA has made no argument to this court, or to the trial court, that its retroactive declaration of an "emergency" after Chaney had defaulted and failed to pay its subcontractors excuses it from compliance with the bond requirements set forth in ORS 279.029(4), nor do we believe that such a retroactive "emergency" is of the sort envisioned by the legislature when it enacted ORS 279.029(5). ORS 279.011(4) defines "emergency" as follows:

> " 'Emergency' means circumstances that could not have been reasonably foreseen that create a substantial risk of loss, damage, interruption of services or threat to the public health or safety that requires prompt execution of a contract to remedy the condition."

Leaving aside the question of whether any "substantial risk of loss, damage, interruption of services or threat to the public health or safety" was involved, it is clear from the statement, "requires prompt execution of a contract," that the legislature intended the "emergency" to be something that predates the need for the prompt execution of a contract. PCHA's after-the-fact declaration of an emergency to excuse Chaney from obtaining a performance bond after Chaney had defaulted on the contract and failed to pay its subcontractors (who would normally be protected by the performance bond) is not the type of "emergency" defined in ORS 279.011(4).

PCHA's next assignment of error, pertaining to the award of attorney fees, rests solely on its arguments that it was not liable to the subcontractors under ORS 279.542. Because the trial court correctly concluded that PCHA was liable to the subcontractors under ORS 279.542, the trial court also correctly awarded attorney fees to respondents.

Finally, PCHA assigns error to the trial court's failure to separately address Platt's alternative *quantum meruit* claim. Because it does not appear from the record that PCHA

raised this issue in the trial court, we do not address it in the first instance on appeal. ORAP 5.45(2).

■      We next turn to Platt's cross-appeal. Platt had a claim for breach of contract against Adolph's, and a stipulated judgment was entered on that claim. In determining Platt's attorney fees, the trial court apportioned them between defendants, rather than finding that defendants were jointly and severally liable for all attorney fees. Platt argues on appeal that where the claims share common issues and both defendants are liable for the same damages, the trial court may not apportion attorney fees between defendants. PCHA responds that the trial court's approach to this issue was reasonable. Both parties argue that our decision in *High Tech Diesel, Inc. v. Littleton*, 127 Or App 242, 872 P2d 984 (1994), supports their respective positions.

In *High Tech*, the plaintiff recovered attorney fees under the terms of a contract for work it had performed on a truck. *Id.* at 244. The defendant counterclaimed on the ground that a lien that the plaintiff had taken was invalid. The plaintiff prevailed on both the claim and the counterclaim, and the trial court awarded attorney fees on both the claim and the counterclaim. On appeal, the issue was whether the plaintiff was entitled to attorney fees for defending against the counterclaim. We held that it was not. We rejected the argument that attorney fees were recoverable on both the claim and the counterclaim on the ground that there were "issues common to both claims." *Id.* at 245 (quoting *Greb v. Murray*, 102 Or App 573, 576, 795 P2d 1087 (1990)). We concluded that, although the property dispute was common to both the claim and the counterclaim, the legal issues on the lien claim and the action on the debt were separate and independent of one another, and therefore the plaintiff was not entitled to attorney fees for defense of the counterclaim. *Id.*

*High Tech* supports what the trial court did here. Platt's claim against Adolph's was based on a contract between Platt and Adolph's and, although that claim did involve the same underlying damages, it was entirely separate from Platt's statutory claim against PCHA. The theories of liability were entirely different, and the success of one

claim was not dependent in any way on the success of the other. Under those circumstances, the trial court's segregation of attorney fees for the different claims was reasonable.

Petitions for reconsideration allowed; former opinion withdrawn; affirmed on appeal and cross-appeal.