Argued and submitted March 30, 2000, affirmed on appeal; reversed on cross-appeal; remanded for entry of judgment for the State of Oregon February 14, 2001

STATE OF OREGON,
by and through its
Department of Administrative Services
and Department of Transportation ex rel
Waste Management Disposal Services of Oregon, Inc.,
dba OREGON WASTE SYSTEMS, INC.,
a foreign corporation,
*Appellant - Cross-Respondent,*

*v.*

UNITED PACIFIC INSURANCE COMPANY,
a Pennsylvania corporation,
*Respondent - Cross-Respondent,*

*and*

STATE OF OREGON,
by and through its
Department of Administrative Services
and Department of Transportation,
*Cross-Appellant.*

(9712-09675; CA A104354)

18 P3d 491

G. Kevin Kiely argued the cause for appellant - cross-respondent. With him on the briefs were Margaret B. Stern, Cable Huston Benedict Haagensen & Lloyd LLP, and Ridgway K. Foley, Jr., P.C., and Greene & Markley, P.C.

Thomas A. Larkin argued the cause for respondent - cross-respondent United Pacific Insurance Company. With him on the brief were John Spencer Stewart, James Clark Prichard, and Stewart Sokol & Gray, LLC.

Denise G. Fjordbeck, Assistant Attorney General, argued the cause for cross-appellant. With her on the briefs were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Haselton, Presiding Judge, and Deits, Chief Judge,* and Wollheim, Judge.

WOLLHEIM, J.

---

* Deits, C. J., *vice* De Muniz, P. J., resigned.

**WOLLHEIM, J.**

Plaintiff Oregon Waste Systems (OWS) filed this claim against United Pacific Insurance Company (UPIC) and the State of Oregon, seeking payment for work it performed as a subcontractor on a public contract for the removal and disposal of tires and tire shreds. Smith Technology Corporation (Smith), the primary contractor, provided a performance bond to the state on a form provided by UPIC, its surety. OWS seeks payment under the bond or, in the alternative, damages from the state for failure to require a sufficient bond. The state filed a cross-claim against UPIC for indemnification.

On cross-motions for summary judgment on all claims, the trial court ruled that OWS was not entitled to claim payment under the bond and granted UPIC's motion for summary judgment against OWS. However, the court determined that the state's practice of accepting performance and payment bonds from contractors for environmental clean-up projects obligated it to require Smith to provide the same kind of bond. The court granted OWS's motion for summary judgment against the state. The trial court then issued a judgment under ORCP 67 B, awarding UPIC final judgment on all claims by OWS and awarding judgment to OWS on OWS's claims against the state. OWS appeals, challenging the trial court's granting of summary judgment to UPIC and asserting that it was entitled to summary judgment. The state cross-appeals, challenging the trial court's granting of summary judgment to OWS on its claim against the state and seeking entry of judgment in its favor.

There are no factual disputes. We review the trial court's rulings to determine whether UPIC was entitled to judgment as a matter of law on OWS's claim on the bond and whether OWS was entitled to judgment as a matter of law on OWS's claim against the state. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 413, 939 P2d 608 (1996). We affirm the trial court's judgment for UPIC. Because we conclude that the trial court erred as a matter of law with regard to OWS's claim against the state, we reverse and remand for entry of judgment for the state.

In December 1996, as part of a clean-up project of the Department of Environmental Quality (DEQ) and the Department of Transportation, the Oregon Department of Administrative Services (DAS) released a solicitation for bids on a contract for the removal and final disposition of tires and tire shreds on the subject private property, a former tire recycling and soil treatment facility. The solicitation specifically described the bid type as a "service contract" and stated that standard terms and conditions for service contracts were applicable. The solicitation required the successful bidder to furnish a "performance" bond in the amount of 100 percent of the total contract amount on a form prescribed by DAS.

The state awarded the contract for the removal and disposal of the tires (the Contract) to Smith as the successful bidder, for a contract price of $830,694. Smith provided a "performance" bond on a form provided by UPIC, as surety. Under the bond, if Smith performed the Contract promptly and faithfully, then the obligation on the bond would become null and void. In the event of a default by Smith in the performance of the contract, the bond provided that UPIC may

> "promptly remedy the default, or shall promptly 1) Complete the Contract in accordance with its terms and conditions, or 2) Obtain a bid or bids for completing the Contract in accordance with its terms and conditions."

The bond incorporates the Contract, which, in turn, includes a provision for prompt payment "to all persons furnishing services, equipment or supplies to Contractor for the performance of work." The bond further provides that "no right of action shall accrue on this bond to or for the use of any person or corporation other than the Owner named herein * * *." DAS is the named "owner" of the bond. Witnesses for the state testified that DAS viewed the Contract as a service contract and chose to accept the UPIC bond, although it did not expressly include *payment* protection.

Smith subcontracted with OWS, in a "service agreement" for nonhazardous waste disposal, for the "transportation and disposal" of the tires and tire shreds. OWS completed its work under the subcontract, but Smith did not pay OWS the full amount agreed to in the subcontract. OWS made a demand for payment on the performance bond, and

UPIC denied the claim, reasoning that the bond does not provide payment security to OWS. OWS subsequently filed the complaint in this proceeding, seeking payment on the bond, or in the alternative, damages from the state for its failure to require a sufficient bond. The trial court dismissed OWS's claim on the bond but granted judgment to OWS on its claim against the state.

■ ORS chapter 279 governs the advertisement, bidding and award of "public contracts." When a public contract is for a "public improvement," ORS 279.029 requires that the successful bidder execute a "good and sufficient bond, to be approved by the public contracting agency, in a sum equal to the contract price for the faithful performance of the contract." Although the statute says that the "good and sufficient" bond is for the "performance" of the contract, the parties agree that the bond required by ORS 279.029 is a performance and *payment* bond that guarantees not only that the contractor will perform the work but that it will pay any costs incurred in doing so. Under ORS 279.526, a person claiming to have supplied labor or materials for the prosecution of the work provided for in a public contract has a right of action against the bond of a contractor or subcontractor "as provided for in ORS 279.029" upon giving the required notice. It is under ORS 279.526 that OWS asserts its claim under the bond.

We first consider whether the Contract between the state and Smith was subject to the provisions of ORS 279.029(1)(b). It is agreed that the contract was a "public contract," which is defined in ORS 279.011(6) as "any purchase, lease or sale by a public agency of personal property, public improvements or services other than agreements which are for personal service." OWS contends that the Contract was a contract for a "public improvement," and therefore subject to the bonding requirement of ORS 279.029. In the state's view, the Contract was a service contract and therefore was not subject to the provisions of ORS 279.029(1)(b).

■ ORS 279.011(8) defines "public improvement" for purposes of the public contracting law to

"mean[ ] projects for construction, reconstruction or *major renovation* on real property by or for a public agency. 'Public

improvement' does not include emergency work, minor alteration, ordinary repair or maintenance necessary in order to preserve a public improvement." (Emphasis added.)

In OWS's view, the Contract was a "major renovation" to real property and qualifies as a "public improvement" in that sense of the term. In discerning the legislature's intent, the first level of analysis requires an examination of the text and context of the statutory provision. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). We begin with the common meaning of the words themselves. "Renovation" is not defined in chapter 279. The most relevant dictionary definitions provide: "1 : the act or process of renovating : making over : REVIVAL 2: the state of being renovated." *Webster's Third New Int'l Dictionary*, 1923 (unabridged ed 1993). The most relevant definition of "renovate," is "2 : to restore to a former state (as of freshness, soundness, purity), or newness of appearance : make over : renew (~ a house)." *Id* at 1922-23.

OWS contends that the removal of tires as a part of the general clean-up of the site was a "renovation," because it brought the land to its former state of "freshness, soundness, purity." We reject the contention. Accepting only for the sake of discussion OWS's view that "renovation" is not limited to work on structures and that land without improvements can be renovated,[1] the work that OWS performed in removing tires did not renovate the land by restoring it to a former state. The hauling away of tires simply uncovered the ground. The undisputed record shows that, although the site would have a different appearance after the tires were removed, the land itself was to be unaltered by virtue of the Contract, except for possible incidental removal of topsoil mixed with tire shreds. In fact, after the tire removal, the land remained contaminated and in need of further clean-up. The Contract was, as the state correctly characterized it in its

---

[1] We note that for purposes of the prevailing wage rate laws, ORS 279.348 *et seq.*, "public works," to which the prevailing wage rate law applies, ORS 279.350, are defined to include "major renovation," ORS 279.348(3), which is in turn defined by the Bureau of Labor and Industries as "the remodeling or alteration of *buildings or other structures within the framework of an existing building or structure.*" OAR 839-016-0004(9) (emphasis added).

solicitation for bids, a service contract. We reject OWS's contention that the removal of tires was a "renovation" of the site and accordingly conclude that the Contract was not a contract for a "public improvement." Because the bonding requirement in ORS 279.029 depends upon the contract being one for a public improvement, we conclude, as did the trial court, that the statute is inapplicable to the Contract.[2]

■     OWS nonetheless asserts that it has a claim directly on the bond by virtue of the bond's incorporation of the Contract, which, in turn, contained a provision mandated by ORS 279.312(1) requiring the prompt payment of all persons supplying labor and materials on a public contract. Citing the Supreme Court's opinion in *Wiley Co. v. Home Indemnity Co.*, 213 Or 493, 326 P2d 123 (1958), OWS asserts that, when a performance bond incorporates a public contract by reference, a right of action on the bond is created in favor of unpaid third-party subcontractors and suppliers of materials and labor. That is because the statutory provision for prompt payment of suppliers of labor and materials, which is deemed to be a part of every public contract, becomes a condition of the satisfaction of the bond. In *Wiley*, a supplier of materials on a public construction project for a school district obtained a judgment against the general contractor for payment for materials supplied to a subcontractor. The general contractor, in turn, sought to recover the amount of the judgment from the *subcontractor's* performance bond surety. The court said that the requirement in ORS 279.312 for prompt payment of suppliers of materials was required by law to be included in the general contractor's agreement with the school district, and, in turn, had been incorporated into the subcontractor's agreement with the general contractor. As a result, because the surety guaranteed the subcontractor's performance, it also guaranteed the subcontractor's obligation under ORS 279.312 to pay for all materials.

By analogy, OWS contends that the "prompt pay" requirement of the Contract was an aspect of Smith's

---

[2] In view of our conclusion that no bond was required under ORS 279.029, we need not address whether, if a statutory bond had been required, UPIC's bond would be interpreted to include the statutory bond. *See* ORS 742.370.

performance in its agreement with the state that was guaranteed by UPIC's performance bond. That could well be the case. However, contrary to OWS's contention, the court in *Wiley* did not say that the "prompt payment" provision necessarily gives a right of action on the bond to third-party subcontractors or suppliers. The plaintiff in *Wiley* was the obligee under the bond. The court held that, because of the incorporation of the "prompt payment" provision, the bond guaranteed the subcontractor's obligation *to the plaintiff*, the obligee, for payment of labor and materials. The court expressly did not address whether the "prompt payment" provision created a right of action on the bond by a third-party subcontractor or supplier of materials. *Wiley*, 213 Or at 501.

By contrast, the key distinguishing feature of UPIC's bond is that only the state is the obligee, and only the state has a right to bring an action on the bond. OWS has no right under the bond to bring a claim directly on the bond. OWS cites to no other authority that would support the conclusion that the "prompt payment" provision of the Contract gave rise to a right of action on the bond by OWS as a subcontractor providing labor. Furthermore, we are cited to no authority that would prevent UPIC from limiting a right of action under the bond to the state. Accordingly, we conclude that the trial court properly granted summary judgment to UPIC on OWS's claim under the bond.

■ Next we consider OWS's claim against the state based on its failure to require a payment bond. ORS 279.542 provides, in part:

> "If the contract is one for which a bond * * * as provided for in ORS 279.029 is required and the contractor fails to pay for labor or materials * * * and the officers of the public body which let the contract fail or neglect to require the person entering into the contract to execute a bond * * *:
>
> "(1)   The State of Oregon * * * shall be jointly liable for the labor and materials used in the prosecution of any work under the contract * * * if the contract was entered into with the State of Oregon."

Under ORS 279.542, if a bond under ORS 279.029 "was required," but the state failed or neglected to require the execution of one, then the state and the contractor are jointly liable for payment of labor and materials. As we said in *Platt Electric Supply, Inc. v. JC Northwest, Inc.*, 157 Or App 79, 84, 967 P2d 924 (1998), *mod on recons* 159 Or App 328, 976 P2d 1186, *rev den* 329 Or 61 (1999), by its terms, ORS 279.542 imposes liability on the state if: (1) the contract was one for which a bond "was required"; (2) the contractor failed to pay for labor and materials; and (3) the state failed or neglected to require the contractor to obtain a bond as provided in ORS 279.029. The trial court determined that, although the Contract was not an agreement for a public improvement and OWS could not seek payment under the bond itself, the state was nonetheless liable to OWS under ORS 279.542(1), because, by its practice of requiring statutory bonds on environmental clean-up projects, it has established a "rule" requiring such bonds in all environmental clean-up projects. OWS further asserts that, even assuming the state has no rule requiring the execution of a statutory bond, the state is nonetheless liable to OWS under ORS 279.542(1), because it in fact required a statutory bond in its bid solicitation, as it was authorized to do, and later failed to require the execution of a statutory bond.

As we understand OWS's contention and the basis for the trial court's conclusion, the state's liability is triggered under ORS 279.542(1) not because a statutory bond is required by ORS 279.029(1), but because the state has independently required a statutory bond, either by contract, common practice or rule, and has failed to require the execution of one in this instance. OWS's reading of the statute may find some support in the statute's passive phrasing: "If the contract is one for which a bond * * * as provided for in ORS 279.029 *is required* [.]" (Emphasis added.) However, we reject that reading. As we said in *Platt Electric*, by its terms, ORS 279.542 imposes liability on the state *when a bond is required under ORS 279.029* and the state fails to require one. 157 Or App at 85. That is the most straightforward reading of the statute and we adhere to it. Because no bond was required by ORS 279.029, the state has no liability under ORS 279.542.

In summary, on the appeal, we conclude that the trial court correctly determined that the contract was not a

contract for a public improvement for which a bond is required under ORS 279.029. Additionally, we conclude that OWS was not an obligee under the bond provided to the state by UPIC and had no right to bring a claim on the bond. On the state's cross-appeal, we conclude that the trial court erred in determining that the state's practice of accepting statutorily sufficient bonds on environmental clean-up contracts renders it liable to OWS under ORS 279.542.

Affirmed on appeal; reversed on cross-appeal; remanded for entry of judgment for the State of Oregon.